IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Delaware            :
                              :
                              :
                              :
           v.              :   No.  1347 C.D. 2022
                              :
Delaware County Regional Water   :   Submitted: May 7, 2024
Quality Control Authority,         :
and Delcora Rate Stabilization Fund :
Trust Agreement b/t the Delaware  :
County Regional Water           :
Quality Control Authority as settlor :
and Univest Bank and Trust Co. as  :
trustee                      :
                              :
           v.              :
                              :
Darby Creek Joint Authority, Southern :
Delaware County Authority, and Aqua :
Pennsylvania Wastewater, Inc.    :
                              :
                              :
Appeal of: County of Delaware    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED: June 4, 2024

Appellant the County of Delaware (County) appeals from the September 13, 2022 order (Remand Order) entered by the Delaware County Court of Common Pleas (trial court) after remand from this Court's March 3, 2022 decision in *County of Delaware v. Delaware County Regional Water Quality Control Authority*, 272 A.3d 567 (Pa. Cmwlth. 2022) (*DELCORA I*). In *DELCORA I*, we reversed the trial court's December 28, 2020 order, which, in effect, precluded the County from dissolving the Delaware County Regional Water Quality Control Authority (DELCORA) and

transferring its assets to the County. The County now appeals from the Remand Order, essentially arguing that the trial court exceeded its authority on remand in multiple respects. Upon review, we affirm in part, and vacate in part.

## I.  BACKGROUND AND PROCEDURAL POSTURE

This Court has summarized, on three prior occasions and in various procedural postures, the relevant facts underlying this complex dispute. *See DELCORA I*, 272 A.3d at 569-75; *County of Delaware v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 455 C.D. 2021, filed September 12, 2022), slip op. at 2-8 (*DELCORA II*); *County of Delaware v. Delaware County Regional Water Quality Control Authority* (Pa. Cmwlth., No. 1025 C.D. 2022, filed April 4, 2023), slip op. at 2-6 (*DELCORA III*). We will not do so again here other than to extract the facts pertinent to this appeal.

In September 2019, DELCORA entered into an asset purchase agreement (APA) with Aqua Pennsylvania Wastewater, Inc. (Aqua) to accomplish Aqua's purchase of DELCORA's wastewater management system.[1] DELCORA entered into

---

[1] DELCORA entered into the APA pursuant to Section 5607(d)(4) and (13) of the Municipality Authorities Act (MAA), 53 Pa.C.S. § 5607(d)(4), (13), which provides as follows:

> **(d) Powers.--**Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers:
>
> . . . .
>
> (4) To acquire, purchase, hold, lease as lessee and use any franchise, property, real, personal or mixed, tangible or intangible, or any interest therein necessary or desirable for carrying out the purposes of the authority, and to sell, lease as lessor, transfer and dispose of any property or interest therein at any time acquired by it.
>
> . . . .
>
> (13) To make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying on of its business.

2

a separate trust agreement (Trust) with itself as the trust settlor and Univest Bank and Trust Co. as trustee (Trustee), for the benefit of DELCORA's customers. The Trust is to be funded primarily by the proceeds of the sale of DELCORA's assets to Aqua, which is identified as a third-party beneficiary in the Trust. On March 3, 2020, Aqua filed an application (Application) with the Pennsylvania Public Utility Commission (PUC) seeking approval of the APA pursuant to Sections 1102, 1329, and 507 of the Public Utility Code, 66 Pa.C.S. §§ 1102, 1329, and 507 (PUC Action). We described the PUC Action in *DELCORA III*:

> [ ] Aqua's Application . . . seek[s] [PUC] approval to acquire DELCORA's wastewater assets for $276.5 million. In its Application, Aqua requested the issuance of an Order and Certificates of Public Convenience for the approval of: (1) the acquisition by Aqua of DELCORA's wastewater system assets situated within all or part of 49 municipalities within portions of Chester and Delaware Counties; (2) the right of Aqua to begin to offer, render, furnish and supply wastewater service to the public in portions of Delaware and Chester Counties; and (3) the assignment of 163 DELCORA contracts to Aqua.
>
> . . . .
>
> On May 18, 2020, [the County] filed a petition to intervene in the [PUC Action], claiming that Aqua's application was not in the public interest and that [the Trust] and related agreements associated with the Application violate applicable law.

*DELCORA II*, slip op. at 2-3.

On May 14, 2020, the County filed a complaint against DELCORA in the trial court challenging the creation of the Trust and the transfer of DELCORA's assets to the Trust. On June 3, 2020, the County passed Ordinance No. 2020-4 (Ordinance), which ordered DELCORA to "terminate its operation[s], wind up its affairs, satisfy outstanding debts, [ ] take all actions necessary to remove any impediments to its

3

termination, and refrain from taking any action or expending any funds inconsistent with [ ] termination of its affairs." *DELCORA I*, 272 A.3d at 572.[2] On June 15, 2020, the County filed an Amended Complaint against DELCORA, the Trust, and the Trustee, in which it sought declaratory, injunctive, and mandamus relief and asserted the following claims: (1) DELCORA violated its articles of incorporation by adopting the funding mechanism for the Trust (Count I); (2) DELCORA violated Section 5603 of the MAA, 53 Pa.C.S. § 5603, by creating the Trust (Count II); (3) DELCORA violated Section 5612 of the MAA, 53 Pa.C.S. § 5612, by creating the Trust and transferring its assets to the Trust (Count III); (4) DELCORA violated Sections 7732 and 7734 of the Uniform Trust Act (UTA), 20 Pa.C.S. §§ 7732, 7734, by creating the Trust (Count IV); and (5) a request for writ of mandamus compelling DELCORA's compliance with the Ordinance and termination of its operations (Count V).

DELCORA, Aqua, and two additional intervening parties (Darby Creek Joint Authority (DCJA) and Southern Delaware County Authority (SDCA)) answered the Amended Complaint and asserted counterclaims seeking declaratory and injunctive relief regarding the APA, the Ordinance, and the Trust. Specifically, DELCORA asserted counterclaims requesting declarations that (1) the Trust does not violate its

---

[2] The County enacted the Ordinance pursuant to Section 5622(a) of the MAA, which provides as follows:

> (a) **Project.--**If a project established under this chapter by a board appointed by a municipality is of a character which the municipality has power to establish, maintain or operate and the municipality desires to acquire the project, it may by appropriate resolution or ordinance adopted by the proper authorities signify its desire to do so, and the authorities shall convey by appropriate instrument the project to the municipality upon the assumption by the municipality of all the obligations incurred by the authorities with respect to that project.

53 Pa.C.S. § 5622(a).

articles of incorporation, the MAA, the UTA, or public policy (Count I); (2) the Ordinance violates the MAA (Count II); and (3) (i) the APA "is a valid, enforceable agreement that must be formally assumed and honored by the County before it can terminate DELCORA, and (ii) the transaction contemplated by the APA must proceed without interference from the County, subject to approval by the [PUC]" (Count III). (Reproduced Record (R.R.) at 1293a-94a.) Aqua likewise asserted counterclaims (1) requesting a declaration that the APA is valid, binding, and enforceable and must close prior to DELCORA's termination (Count I); and (2) alleging that the County tortiously interfered with Aqua's contractual relationship with DELCORA (Count II). SDCA and DCJA also asserted declaratory judgment and tortious interference counterclaims.[3]

Following a bench trial, the trial court entered an order that, in pertinent part, found as follows: (1) the APA is a legal and enforceable contract that does not violate the MAA or public policy and is authorized by the MAA, subject to the PUC's approval; (2) the Ordinance interferes with and "implodes" DELCORA's contractual obligations; (3) the County must afford "full faith and credit" to the APA; (4) the County generally has the authority to terminate DELCORA, but may not interfere or refuse to comply with the APA in doing so; (5) the County may not terminate DELCORA prior to closing on the APA or otherwise interfere with DELCORA's contractual relationship with Aqua; (6) all parties must cooperate to comply with winding up and dissolution of DELCORA, but only after, and without any interference with, the consummation of the sale contemplated by the APA; and (7) the Trust is valid and does not violate the MAA or UTA. (Trial Ct. Order, 12/28/20, ¶¶ 4, 6, 10, 16-18, 31-33; R.R. at 3223a-25a, 3227a.) In addition to affording other relief, the trial court specifically entered a declaratory judgment that the APA is valid, binding, and

_____

[3] The tortious interference counterclaims later were withdrawn. (R.R. at 3218a, 3220a.)

enforceable under the MAA, subject to the approval of the PUC, and that termination of DELCORA may not occur prior to closing on the APA. *Id.* ¶ 34(c); R.R. at 3227a-28a. *See also id.* ¶ 37; R.R. at 3229a ("This [o]rder is not intend[ed] to interfere with the authority and jurisdiction of the [PUC] [in the PUC Action].").

The County appealed to this Court, arguing, *inter alia*, that the trial court erred in (1) not issuing a writ of mandamus requiring DELCORA to comply with the Ordinance, (2) assuming jurisdiction to decide the validity of the APA where exclusive jurisdiction over public utility contracts is vested in the PUC; and (3) determining that the Trust was valid and enforceable. *DELCORA I*, 272 A.3d at 573. In its Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) opinion, the trial court explained that it "found that [S]ection 5607 of the MAA permits DELCORA to enter into [the APA][] [and] also [found] that the [APA's] terms were still subject to the approval of the PUC." *Id.* at 574 (original bracketing removed).

In *DELCORA I*, we described the "major issue" in the appeal as whether the County, pursuant to Section 5622(a) of the MAA, may exercise its unilateral authority to dissolve and/or obtain DELCORA's assets *after* DELCORA already had entered into the APA pursuant to Section 5607(d)(4) and (13) of the MAA. *DELCORA I*, 272 A.3d at 569.[4] We further noted the unique circumstances in which the issue was presented, namely, where (1) the terms of the APA had not been fully performed and were subject to a condition subsequent, and (2) the County disputedly did not assume, and could not fulfill, DELCORA's obligations under the APA. *Id.* We ultimately

---

[4] In *In re: Chester Water Authority Trust*, 263 A.3d 689 (Pa. Cmwlth. 2021) (*en banc*), we reconfirmed that a municipality may, under Section 5622(a) of the MAA, unilaterally dissolve an authority it had created and/or obtain its assets. Although the Pennsylvania Supreme Court subsequently granted allowance of appeal, the proceedings before the Supreme Court are stayed due to the City of Chester's suggestion of bankruptcy. *See In re: Chester Water Authority Trust* (Pa., No. 46 MAP 2022, filed November 17, 2022).

6

reversed the trial court's order in its entirety, concluding that "the County retains its statutory authority under [S]ection 5622(a) of the MAA, notwithstanding DELCORA's exercise of power under [S]ection 5607(d)(4) and (13) of the MAA." *Id.*

Because it is pertinent to the issues in this appeal, we quote at length our rationale in *DELCORA I*:

> [W]e conclude that the Ordinance is valid and enforceable to the extent it directs the termination/dissolution of DELCORA and dictates that, after termination/dissolution is underway, DELCORA must engage in conduct necessary to effectuate the transfer of its assets and the assumption of its liabilities/obligations by the County.
>
> Citing its authority to enter into the APA with Aqua under [S]ection 5607(d)(4) and (13) of the MAA and claiming that the APA is a valid and enforceable contract, DELCORA questions whether the County could perform the obligations imposed by the APA. Likewise, Aqua, referring to the trial court's findings and determinations on the issue, asserts that the County, in the event it would assume the obligation of the APA, would breach the terms and conditions of the APA. Both DELCORA and Aqua contend that the County's inability to satisfactorily fulfill the obligation of the APA serves as an "impediment"—or a bar—to the County's exercise of power under [S]ection 5622(a) of the MAA.
>
> . . . .
>
> We find our reasoning in *In re: Chester Water Authority Trust* equally applicable to the situation where an authority has expressed its desire to sell its assets, and has executed a contract to that effect, at least where, as here, the contract has not been fully performed. Reading [S]ection 5622(a) in tandem with [S]ection 5607(d)(4) and (13), it is apparent that [S]ection 5622(a) of the MAA presupposes that an authority has the power to enter contractual obligations, even with respect to a transfer of its assets, and expressly accounts for the scenario where the authority has already entered a valid and binding contract. That is, based on the plain language of

7

[S]ection 5622(a) of the MAA, a municipality can "assume" all of the "obligations incurred" by an authority, including those in a contract to sell its assets, by obtaining an authority's project and legal title to the assets of the project. Otherwise, if an authority could override the power granted to a municipality in [S]ection 5622(a) by simply incurring contractual obligations, then the last clause of [S]ection 5622(a) would be rendered nugatory. . . . [W]e conclude that an authority may utilize its power to contract and sell its assets to another entity; however, a municipality may invoke its power under [S]ection 5622(a) to demand that the authority terminate and/or convey its assets to the municipality at any time prior to the complete performance of that contract.

Moreover, a municipality's ability to perform the contractual obligations that it acquires from an authority is not an "impediment" recognized by the law where, as here, the authority has not obtained (and a municipality will thus not assume) any continuing "debt" or obligation that an authority has to repay, in what is basically financial installments, outstanding loans, or other forms of an immediate or continuing repayment obligation. That said, it is important to note that the County, in its demand that DELCORA terminate its operations and transfer its assets to the County, effectively places the County in a situation where it would receive a "contractual assignment" from DELCORA as a matter of statutory law. Consequently, the County would, without question or condition, be bound by the terms and conditions of the APA, just as if it were DELCORA itself in the sense that it would essentially become a "party" to a contract. As such, all of the concerns that the trial court enunciated regarding the County's inability to fulfill the APA's contractual obligations is completely irrelevant and has no place in the statutory analysis of [S]ection 5622(a) vis-à-vis [S]ection 5607(d)(4) and (13) and the issue of whether the County retains its authority pursuant to [S]ection 5622(a) despite the APA and its specific obligations. This is because the County, irrespective of whether it can live up to the contractual promises made in the APA, will have no

8

choice but to abide by and fully perform its obligations or else be potentially subjected to a breach of contract suit by Aqua.

In sum, [S]ection 5622(a) provides the County with the authority to enact the Ordinance, and the Ordinance complies with the requisites necessary for the County to demand the termination of DELCORA and the conveyance of DELCORA's assets and obligations to the County.

[W]e conclude that the trial court erred in denying the County's request for a writ of mandamus and granting injunctive relief in favor of DELCORA and Aqua. Accordingly, we reverse the trial court's order and remand to the trial court for the entry of an order consistent with this opinion. Due to the basis of and grounds for our disposition, we need not address the County's remaining arguments.

*DELCORA I*, 272 A.3d at 578-81 (internal citations omitted).

No parties petitioned the Pennsylvania Supreme Court for allowance of appeal from *DELCORA I*. On remand, the trial court directed the parties to submit proposed orders and heard argument on September 7, 2022. On September 13, 2022, the trial court entered the Remand Order which, in relevant part:

(1)  Denied the requests of DELCORA, SDCA, and DCJA for a declaratory judgment that the Ordinance is invalid and unenforceable. (Remand Order, ¶¶ 4, 7);

(2)  Granted Aqua's request in Count I of its Counterclaim for a declaratory judgment that the APA is a "valid, binding and enforceable contract, authorized by Subsections 5607(d)(4) and [](13) of the [MAA], 53 [Pa.C.S. §§ 5607(d)(4), (13)], subject to approval by the [PUC]" and "consistent with [the trial court's] prior determination as set forth in the December 28, 2020 order . . . and consistent with the Commonwealth Court's March 3, 2022 Order that is final and unappealable." *Id.* ¶ 5;

9

(3)     Denied Aqua's request in Count I of its counterclaim for a declaratory judgment that the APA must close prior to DELCORA's dissolution.  *Id.* ¶ 6;

(4)     Granted the County's request in Count V of the Amended Complaint for a writ of mandamus directing that DELCORA comply with the Ordinance and effectuate its termination, "subject to the terms and findings of this [Remand] Order and the decision of the Commonwealth Court of March [3], 2022."  *Id.* ¶ 9; and

(5)     Denied, as moot, Counts I and II of DELCORA's counterclaim and the County's Trust-related claims in Counts I-IV of the Amended Complaint.  *Id.* ¶ 10.[5]

(Remand Order, 9/13/2022; R.R. at 3409a-12a.)  The trial court concluded by noting that this Court's "focused holding [in *DELCORA I*] is that winding down of DELCORA is permissible, the [Ordinance] is enforceable, and the [APA] remains a valid and enforceable contract subject to the [PUC's] review and regulations," and that "the [PUC] has jurisdiction to assess the ultimate transaction . . . ."  *Id.* ¶¶ 11-12.[6]

---

[5] The trial court did not deny or dismiss as moot Count III of DELCORA's counterclaim, which requested a declaratory judgment that the APA was valid and enforceable, with associated injunctive relief.  Aqua requested the same relief in Count I of its counterclaim, which the trial court expressly granted.  (Remand Order, ¶ 5.)

[6] On January 18, 2023, DELCORA filed a separate declaratory judgment action against both the County and Aqua in the trial court, seeking determinations as to whether the Ordinance precludes DELCORA from proceeding under the APA and whether DELCORA had the authority to create, and may remain in existence to administer, the Trust (2023 DELCORA Action).  *See In re: Application of Aqua Pennsylvania Wastewater, Inc.* (Pa. P.U.C., No. A-2019-3015173, filed February 6, 2023), slip op. at 4.  The trial court stayed the 2023 DELCORA Action pending our disposition of the County's appeal here.  *See id.*, Status Reports filed February 5, 2024.  On February 6, 2023, Administrative Law Judge F. Joseph Brady stayed the PUC Action until final, unappealable orders are entered on pending matters in the City of Chester's bankruptcy proceedings and in the 2023 DELCORA Action.  *See id.*, slip op. at 10.

10

The County now appeals to this Court, essentially arguing that the trial court's Remand Order both exceeds the scope of our remand in *DELCORA I* and usurps the PUC's exclusive jurisdiction over public utility contracts.[7]

## II.    QUESTIONS PRESENTED

The County presents four interrelated issues for our disposition, which we can fairly condense and summarize as follows: (1) whether the Remand Order is outside the scope of the remand in *DELCORA I*; (2) whether the trial court erred in declaring that the APA was a valid and enforceable agreement where the PUC has the exclusive jurisdiction over such questions; and (3) whether the trial court erred in dismissing as moot the County's Trust-related claims.

## III.    DISCUSSION

### A.    The Scope of *DELCORA I*

The County first argues that the trial court's declaration in the Remand Order that the APA is a valid and enforceable agreement subject to approval by the PUC exceeded the scope of the remand from our decision in *DELCORA I*.  We agree, in part.

Pa.R.A.P. 2591(a) provides, in pertinent part, that "[o]n remand of the record[,] the court . . . below shall proceed in accordance with the judgment or other order of the appellate court[.]"  Pa.R.A.P. 2591; *see also* Section 706 of the Judicial

---

[7] In *DELCORA III*, we explained the complex route through which the County has prosecuted this appeal.  *See DELCORA III*, slip op. at 5-8.  Those details are not material to our disposition of the County's issues here, other than to highlight that (1) we concluded in *DELCORA III* that the Remand Order was a final order disposing of all claims against all parties; and (2) we properly are deciding the County's issues at this case number and not the related, and now quashed, appeal at No. 1205 C.D. 2022.  *Id.* at 10-16.  The trial court filed a Pa.R.A.P. 1925(a) opinion on December 8, 2022, in which it opined that the Remand Order is consistent with the proposed orders submitted by the parties and our decision in *DELCORA I*.  (R.R. at 3488a-89a.)

Code, 42 Pa.C.S. § 706 ("An appellate court may affirm [or] vacate . . . any order brought before it for review, and may remand the matter and . . . require the entry of such appropriate order . . . as may be just under the circumstances."). We have explained a lower court's responsibilities on remand as follows:

> It has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order. *Commonwealth v. Sepulveda*, [144 A.3d 1270, 1280 n.19 (Pa. 2016)]. In *Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Cmwlth. 2014), *appeal denied*,[ ]106 A.3d 727 (Pa. 2014), which the Supreme Court cited with approval in *Sepulveda*, this Court explained: "Where a case is remanded for a specific and limited purpose, 'issues not encompassed within the remand order' may not be decided on remand. A remand does not permit a litigant a 'proverbial second bite at the apple.'" *Levy*, 94 A.3d at 442 (quoting [*Independent School District Consisting of the Borough of Wheatland*], 912 A.2d 903, 908 (Pa. Cmwlth. 2006)).

*Marshall v. Commonwealth*, 197 A.3d 294, 306 (Pa. Cmwlth. 2018), *aff'd*, 214 A.3d 1239 (Pa. 2019); *see also Commonwealth v. Tick, Inc.*, 246 A.2d 424, 426 (Pa. 1968) (trial court's duty on remand is to "comply strictly with our mandate[,] and such compliance require[s] the court to proceed in a manner consistent with the views expressed in our opinion"); *Commonwealth v. Null*, 186 A.3d 424, 429 (Pa. Cmwlth. 2018) ("[F]ollowing remand, the trial court below must comply strictly with this Court's mandate and has no power to modify, alter, amend, set aside, or in any measure disturb or depart from this Court's decision as to any matter decided on appeal.").

> The Pennsylvania Supreme Court has further explained:

> [A]lthough Pa.R.A.P. 2591 requires the court or other government unit on remand to "proceed in accordance with the judgment or other order of the appellate court," it does not require the court or government unit to utilize any

specific mode of compliance with a general remand order, such as a trial or evidentiary hearing. Consequently, when an appellate court remands for "further proceedings[,]" there is no "one size fits all" talismanic definition for those terms which is applicable to all cases and situations. It is axiomatic that the facts and procedural history of each case as it developed in the lower court or administrative agency will be different when considered by an appellate tribunal, and, thus, if that tribunal determines that a remand for further proceedings is warranted, the nature of those proceedings will necessarily vary depending on the specific circumstances presented by each individual case.

Thus, every remand order directing that further proceedings be conducted must necessarily be examined in conjunction with the opinion of the appellate tribunal and the particular facts, circumstances, and procedural history of the case in order to determine what the lower court or tribunal is required to do upon return of the case to it. It must be emphasized that, when a case is returned to a lower court or administrative agency with such a directive, those tribunals have usually already conducted some fact-finding or legal analysis in the case and, accordingly, this acquired familiarity with the already developed record allows the court or administrative agency considerable discretion to choose the specific type of proceedings it will conduct in order to fulfill the purposes for which the appellate court has ordered remand.

*SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353, 371 (Pa. 2017) (internal citation omitted).

Here, the County's Amended Complaint contained four claims asserting that DELCORA had violated its articles of incorporation, the MAA, and the UTA by creating and funding the Trust. (Amended Complaint, Counts I-IV.) After enacting the Ordinance, the County added Count V, which requested a writ of mandamus compelling DELCORA to comply with the Ordinance and terminate its operations. *Id.*,

13

Count V. The County notably *did not* allege that DELCORA did not have the authority to enter into contracts for the sale of its assets pursuant to Section 5607 of the MAA. DELCORA and Aqua nevertheless requested in their counterclaims (1) declaratory judgments establishing the validity and enforceability of the APA; and (2) injunctive relief requiring that the APA close prior to DELCORA's termination. (Aqua Counterclaim, Count I; DELCORA Counterclaim, Count III). In its December 28, 2020 order, the trial court denied all of the County's claims, granted Aqua's and DELCORA's requests for declaratory and injunctive relief regarding the APA, and declared the Trust valid. It is clear from the trial court's order that its rationale for denying the County's claims was centered on its preoccupation with preserving the validity and enforceability of the APA and the establishment of the Trust.

On appeal, we considered only two narrow and related issues, namely, whether the County validly adopted the Ordinance and whether DELCORA's entry into the yet-unperformed APA under Section 5607 of the MAA precluded enforcement of the Ordinance prior to the APA's closing. We concluded that, "although an authority may utilize its power to contract and sell its assets to another entity[,]" a municipality nevertheless may "invoke its power under [S]ection 5622(a) to demand that the authority terminate or convey its assets to the municipality at any time prior to the complete performance of that contract." *DELCORA I*, 272 A.3d at 580. We went on to note that the specific contractual obligations in the APA and whether the County assumed and could perform them were issues irrelevant to our statutory analysis. We also noted that, if the APA in fact closed, the County presumably *would* assume certain legal obligations thereunder. *Id.* Any discussion of what the County will or would be obligated to do clearly was dicta. *See id.* at 581 n.11 ("We express no opinion with respect to the viability of any potential remedies at law that Aqua and/or DELCORA

14

may have *in the event* the County assumes the obligations of the APA.") (emphasis added).

Thus, other than noting that DELCORA has the authority to contract under the MAA and exercised that authority to execute the APA, we made no conclusions regarding the substantive validity or enforceability of either the APA or Trust. Those issues simply did not, because they needed not, factor into our analysis. We concluded that the trial court erred *both* in denying the County's request for mandamus relief *and* in granting Aqua and DELCORA injunctive relief. We accordingly reversed the trial court *in toto*, remanded for the entry of a consistent order, and declined to address any other issues raised by the County. *Id.* at 581. And, because none of the parties filed a petition for allowance of appeal from *DELCORA I*, it is final.

On remand, the trial court's authority therefore was limited to entering an order granting mandamus relief to the County. Although the trial court ordered that relief, it also made broad pronouncements, in part relying on its prior and now-reversed December 28, 2020 order, regarding the APA and the County's obligations thereunder. (Remand Order, ¶ 5.) To the extent that the trial court's Remand Order recognizes DELCORA's statutory ability to contract under Section 5607 of the MAA, subject to the reviewing jurisdiction of the PUC, it is valid. To the extent that the trial court went any further, it erred.

## B. PUC Jurisdiction

The County next argues that the trial court erred in issuing a declaration that the APA is valid and enforceable because the PUC has exclusive jurisdiction over the validity of public utility contracts. The County also relatedly argues that, because the PUC *may* conclude that the APA is invalid or unenforceable, the trial court erred in granting declaratory relief concerning events that may never ultimately occur.

15

We need not address this issue for two reasons. First, because we conclude that any pronouncements regarding the validity or enforceability of the APA beyond an acknowledgement that such contracts may be executed under Section 5607 of the MAA were outside the scope of our remand in *DELCORA I*, we need not determine whether they also usurped the jurisdiction of the PUC. Second, although the County raised in *DELCORA I* the issue of whether the trial court improperly assumed jurisdiction over the validity of the APA, we declined to address it. The County did not appeal our decision, and the issue therefore is, in this appeal, waived.

### C.      Mootness of the County's Trust-Related Claims

The County lastly argues that the trial court erred in dismissing as moot the County's Trust-related claims because the Trust remains the intended recipient of the proceeds from the APA and this Court in *DELCORA I* reversed the trial court's determinations that the Trust was valid. We disagree. Because we concluded in *DELCORA I* that the County's Trust-related claims were immaterial to determining whether the Ordinance was valid and could be enforced notwithstanding the existence of the APA, we reversed the trial court's decision on those issues. On remand, the trial court rightly determined that they are, in this action, mooted by *DELCORA I*.

### IV.      CONCLUSION

On remand from *DELCORA I*, the trial court was limited to entering an order consistent with our holdings that (1) the County validly enacted the Ordinance, and (2) the Ordinance could be enforced in mandamus notwithstanding DELCORA's otherwise valid exercise of its authority under Section 5607 of the MAA to enter into contracts for the sale of its assets, at least to the extent that such a contract, here the APA, remained unperformed. We affirm the Remand Order to the extent that it grants the County mandamus relief, dismisses the County's Trust-related claims as moot, and

16

acknowledges DELCORA's ability under the MAA to execute the APA. To the extent that paragraphs 2, 3, 5, 9, and 11 of the Remand Order award any further relief, they are vacated.

_____
PATRICIA A. McCULLOUGH, Judge

Judges Covey and Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Delaware      :
                         :
                    v.             :   No.  1347 C.D. 2022
                         :

Delaware County Regional Water  :
Quality Control Authority,       :
and Delcora Rate Stabilization Fund :
Trust Agreement b/t the Delaware  :
County Regional Water         :
Quality Control Authority as settlor :
and Univest Bank and Trust Co. as  :
trustee                        :
                         :
                    v.             :
                         :

Darby Creek Joint Authority, Southern :
Delaware County Authority, and Aqua :
Pennsylvania Wastewater, Inc.,    :
                         :
Appeal of: County of Delaware    :

## ***ORDER***

AND NOW, this 4th day of June, 2024, the September 13, 2022 order of the Court of Common Pleas of Delaware County is AFFIRMED in part, and VACATED in part, as set forth in the foregoing Memorandum Opinion.

 

 

_____
PATRICIA A. McCULLOUGH, Judge